Case No. 22-5175, Property of the People, Inc. et al., Appellants v. United States Department of Justice. Mr. Light for the Appellants, Mr. Ross for the Appellee. Mr. Light, can you hear us? Yes. Okay, please proceed. Good morning, Jeffrey Light on behalf of the Appellants. May it please the Court. FOIA requires that any reasonably segregable portion of a record shall be disclosed after deletion of the portions which are exempt. The District Court in this case concluded that there is indeed some information that is non-exempt and makes sense standing alone without threatening any exemptions. Yet it did not order the release of this information. That was error. In explaining its reasoning, the District Court stated that it is difficult to see what meaningful information could be gleaned from the documents after redaction. It's important to understand what the District Court understood meaningful here to be. It was using meaningful synonymously with valuable or significant rather than intelligible. The District Court found that the information was intelligible. That is, it made sense. What exactly did he say that makes you think he made a decision that doesn't properly characterize what you were talking about? You tell us what he said. Can you tell us in a quotation what it is? The Court stated some information, quote, makes sense standing alone. Say again, I'm sorry. Repeat, please. Quote, makes sense standing alone. And that is what meaningful means. Can you put that whole sentence there? Yeah, this is on Joint Appendix page 369, and I'll read that for you. Please. Plaintiffs correctly observe, however, that there is also some information that is non-exempt and makes sense standing alone without threatening any exemptions. And two sentences after that, he says very clearly he is not applying a helpfulness criterion. And when he sets forth the standard that he is applying, his formulation is a little bit garbled. I'll give you that, because he articulates a prong that, as a matter of sentence structure, is outside of inextricably intertwined. But what he says, that clause that is the basis for this argument that you applied the wrong standard, is practically a direct quote from Mead Data Central. Says the agency need not order, the court may not, need not order the agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which, taken together, have minimal or no information content. It's right out of Mead Data Central. But clearly, what the district court actually did is to find that there is informational content, specifically gave as examples a checkbox stating to be returned or receipt given. That is something that conveys information. Now, the district court may have felt that's not very important information, which is apparently... That is footnote 55 or something. And wherever it was in Mead. Footnote 55. Yeah, footnote 55. Doesn't that sound like the district judge is pretty much saying what was said in footnote 55? What this court was saying in Mead, in terms of conveying information or being meaningful, was simply that it needed to be something that was intelligible. Not that it needed to be in any way important. And this is supported by the court's further holdings in Stolt-Nielsen and Yeager. In Yeager, this court construed Mead, the meaningfulness language, to mean, quote, intelligibility. And in Stolt-Nielsen, this court says that FOIA does not require the information must be helpful. FOIA mandates disclosure of information. So the question is, is what was withheld information? Now, understandably, if there was... I'm sorry, counsel, but under Mead data, if it's minimal, then it can be excluded if it requires significant time and resources. What about minimal? The court said minimal or no information, but... He found that this was minimal. Even if it's intelligible, if it's minimal, under Mead data, the agency doesn't have to commit significant time and resources. If it's intelligible, then what this court said in Yeager, in footnote 16, this court looks to intelligibility. And that is how this court has understood Mead ever since then. So what if it's intelligible yet minimal? How do we deal with that? If it's intelligible yet minimal, Yeager makes clear that that counts and that's reinforced by the decision in Stolt-Nielsen that... So your position is that even if there's very minimal information and it would be extremely burdensome on the agency to expend resources to segregate that information, the agency must do so? Well, what's minimal can be a very subjective thing. And that's why it's important that this court adhere to what it said in Yeager and Stolt-Nielsen using the standard of intelligibility. Even the district court understood this to mean it, quote, makes sense standing alone. That's the same test that we think is relevant here. I just want to make sure I understand your position, Mr. Light. Are you saying that we should read out minimal from our standards in our analysis? It doesn't matter whether or not it's minimal, as long as it's intelligible, the agency must turn it over? Well, this court's case law is not entirely clear because Mead said minimal or no information. But exactly what it meant by minimal, it didn't go on to say. So it's not that Mead is no longer a good law. It's just that subsequent case law has developed that understanding. Something could happen. Let's take Yeager. You want footnote 16 of Yeager over footnote 55 of Mead. You quoted only half of it. But what it says in full is we look to a combination of intelligibility and the extent of the burden in editing. Correct. So I'm focusing right now on the informational or meaningfulness prong. I'll get to in just a moment the burdensomeness prong. But actually, I can go ahead and do that now. The issue of burdensomeness, I think it needs to be remembered that some of its progeny, Neufeld and around that time, were in a very different era when redaction often meant taking an exacto knife and cutting things out or cutting a piece of paper that's exactly the size of the redaction box and pasting it on. It hasn't been since 1982 that this court has used that kind of language. And the more modern cases, such as Billington, describe it this way. The segregability requirement limits claims of exemption to discrete units of information. To withhold an entire document, all units of information in that document must fall within a statutory exemption. Now, that's not to say that burdensomeness is no longer an issue. But as a practical matter, burdensomeness is not great in these days where a couple of mouse clicks can affect the redaction, whereas it might have been more of a concern. And if there is, in fact, an issue of burdensomeness here, it was incumbent on the FBI to say how much of a burden it was. They could have said it would take us 10 hours. They could have said- Do you think the burdensomeness rests on the difference between using the black felt pen versus using the mouse, as opposed to assessing the documents for what can be released and what can't? So, in an ordinary case, that's true. In this case, where we are is that the FBI already conducted that assessment line by line, decided what is exempt and what is not. And its argument here is that it would be burdensome to simply affect that step of drawing a rectangle over that. But moreover, the court needs some basis- You don't think it would be burdensome to go through it line by line? They did that. Yeah. For all 500 documents or just for the 50? For everything. Or the 20? In their declaration, they said they went through every document in these investigative files line by line and conducted their analysis. And they assured the court that that line by line analysis resulted- But to then continue after they go through it, doing the line by line, and go back and go through each line and excise what part has to come out and leave out the part that doesn't have to come out and go through that line by line, you don't think that would be burdensome? You think it changes the burden very much that you're using a mouse rather than a black guy? Well, I do, Your Honor, because in this case, we're not talking about having to go through, again, a narrative paragraph. We're talking about discrete blocks of information. So if the FBI determined that a particular block that says date and contains a date can be withheld, then all it needs to do when it goes through again is redact all the dates. It's not a question of going through and parsing line by line. With the exception of a couple of- Sorry, Mr. Light. Could you identify where the declaration or where in the Joint Appendix there is this language that says they've already done the segregability analysis? Sure. One second. Let me pull it up. Is it 204? Joint Appendix 204. That's the fourth CIDEL. It's in the CIDEL declaration and it references document-by-document analysis there. Yeah, but that doesn't mean that they went within each document to determine what was segregable and what isn't. Well, they then go through in their VON index and in the further declaration that they submitted, and they go through each and every field and give their findings as to what that was. So, for example- So I don't think, though, that it's accurate to say, Mr. Light, that the FBI has already done the segregability analysis and all they would have to do is excise. Just going through document-by-document doesn't mean that they did the additional, much more labor-intensive work of going line-by-line, which is what you represented they did. Well, there aren't, I mean, except for the few documents that involve narratives, there aren't lines. We're talking about a check- How do you know? You haven't seen them. How do you know that? Well, we have samples of the documents that are in the record that were the same type of form, and so that's generally how we know that. But also, the FBI itself goes through and goes section-by-section through each of the documents and explains what those issues are that it has. In terms of it explaining why things were exempt, it went through all of that. So let me see if I can find an example. If you can't, we'll give you a chance to cite it on rebuttal. Yeah, let me look for that, make a list, and I'll get back to you on rebuttal. Okay, why don't you go ahead with anything else? I guess you have any questions, Judge Santel? Okay, thank you. We'll give you time on rebuttal. Okay, thank you. Mr. Ross, good morning. Good morning. Thank you, Your Honor. Jason Ross for the United States, and may it please the Court. I think it might be helpful to do a bit of table setting for the context here. At issue is roughly 470 documents, excuse me, in two confidential informant files. The FBI already provided an extensive bond index, five declarations from an FBI section chief detailing the contents of those files, a supplemental disclosure of a representative sample of the documents for the district courts at camera review, and an additional subset for further camera review. The district court then reasonably determined that the FBI satisfied its obligations under the Freedom of Information Act. In upholding the FBI's indication of a number of FOIA exemptions, the district court reasonably concluded that no information that is otherwise exempt from disclosure could be reasonably segregated and disclosed. The district courts parsed the information into two categories, substantive and non-substantive information. So far as we understand here, plaintiffs only challenged the disclosure of non-substantive information. Does that track the distinction in the affidavit? I think the fourth of evidentiary versus administrative. Roughly, yes, Your Honor. And the, so far as we understand, the information that plaintiffs challenge here is anodyne and non-substantive information like FBI form numbers, whether a form was released by the government publication office. And in fact, plaintiffs already have this information because, as Mr. Light noted, they have sampled forms of exactly the sort that are in these confidential informant files. But absent additional questions, we rest on the government's brief and urge the court to refer. Thank you, sir. Give us back some time. Mr. Light, we'll give you two minutes. Can you hear us? We can't hear you. Ms. Rauffenberger, any suggestions? He's on mute. Okay. Can you hear me now? Yes. Okay. Thank you. So, let's see. You owed us a cite. Did you find what you were looking for? I did not. I was expecting a little bit more than two minutes to look for it. That's fine. But I would refer the court to the sample documents. There was no dispute that the documents that the plaintiff submitted are representative of the kind that are at issue here. If there is any question about that, the court has the underlying forms and can see for itself that we are largely talking about forms with boxes on them. But regardless of whether we're talking about the FBI having already done this work or not, I think it's incumbent on the court, before making a determination that something is burdensome, to have at least some evidence in the record as to burdensomeness. There was none here. Other than the volume of the documents and the sample of 50. Other than the volume of the documents. But this court has never suggested that the volume of documents is determinative. And in a case like this, where a lot of the documents are essentially the same, it's one form, you know, 100 times, it would be much less burdensome. So it's really going to turn on the fact of a particular case, not just the volume in terms of numbers, but I'm also not aware of any case where this. Fair enough. But if you pare it down to the document level, then we're back to Mead, which says you assess the percentage of exempt versus non-exempt and the extent of dispersal. So the court, what the court should have done then is said, here's a document, what's the burden versus, you know, is there any information here? But instead, the court said, in the aggregate, every single document at issue here would take however long it would take. And the aggregate of all the information that might be gotten is this. The parties presented this in 14 categories. The court found that it did not have enough information about each of those 14 categories to make a decision. So it requested that it be provided in camera with those documents. Yet it did not see all 14 of those categories in terms of what the FBI believed was exempt and was not exempt. The government hasn't said exactly which categories were seen, but the court can see that in the in-camera supplemental appendix. Any questions? Okay, thank you. We understand your position. Thank you for the arguments. The case is submitted.
judges: Katsas, Pan, Sentelle